UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------

TAFAZWA S.,

                     Plaintiff,         <u>DECISION AND ORDER</u>
                                        1:22-CV-10736-GRJ

      v.

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.
-------------------------------------------------------

GARY R. JONES, United States Magistrate Judge:

In August of 2019, Plaintiff Tafazwa S.[1] applied for Disability Insurance Benefits under the Social Security Act. The Commissioner of Social Security denied the application.  Plaintiff, represented by Joseph Albert Romano, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 8).

This case was referred to the undersigned on August 16, 2023. Presently pending are the parties' Motions for Judgment on the Pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket Nos. 10,

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

12). For the following reasons, Plaintiff's motion is due to be denied, the Commissioner's motion is due to be granted, and this case is dismissed.

## I. BACKGROUND

### A. Administrative Proceedings

Plaintiff applied for benefits on August 26, 2019, alleging disability beginning November 9, 2018. (T at 13).[2]  Plaintiff's application was denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on October 23, 2020, before ALJ Vincent M. Cascio. (T at 31-54).   ALJ Cascio issued a decision denying the application for benefits on November 4, 2020. (T at 10-24).  The Appeals Council denied Plaintiff's request for review. (T at 1-6)

Plaintiff filed an action in the United States District Court for the Southern District of New York seeking judicial review.  On February 24, 2022, the Honorable Robert W. Lehrburger, United States Magistrate Judge, approved a stipulation remanding the matter for further proceedings. (T at 596-97).

ALJ Cascio held a second administrative hearing on July 14, 2022. (T at 565-85).  Plaintiff appeared with her attorney and testified. (T at 572-78).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 9.

The ALJ also received testimony from Lauren Calderon-Hall, a vocational expert. (T at 578-84).

B.    *ALJ's Decision*

On August 2, 2022, the ALJ issued another decision denying the application for benefits. (T at 540-61).  The ALJ noted that Plaintiff had amended her application to request a closed period of disability starting on November 9, 2018 (the alleged onset date) and ending on November 16, 2021 (the date she returned to work). (T at 544).

The ALJ found that Plaintiff did not engage in substantial gainful activity during the closed period and meets the insured status requirements of the Social Security Act through September 30, 2024. (T at 546).  The ALJ concluded that Plaintiff's right shoulder impingement; lateral epicondylitis of right elbow; cervical degenerative disc disease and radiculopathy; lumbar degenerative disc disease and radiculopathy; and obesity were severe impairments as defined under the Act. (T at 546).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 547).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 CFR

404.1567 (a), with the following limitations: she can perform occasional climbing of ramps and stairs; with no climbing ladders, scaffolds and ropes; occasional balancing, stooping, kneeling and crouching; but she can never crawl; she can occasionally reach, including overhead reaching, with the right upper extremity; and frequently handle and finger with the right hand and wrist. (T at 548).

The ALJ concluded that Plaintiff could not perform her past relevant work as a nurse assistant. (T at 554).

Considering Plaintiff's age (39 on the alleged onset date), education (at least a general equivalency diploma), work experience, and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 554).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between November 9, 2018 (the alleged onset date) and November 16, 2021 (the date she returned to work). (T at 555).

On October 25, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's second decision the Commissioner's final decision. (T at 531-39).

C.    *Procedural History*

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on December 20, 2022. (Docket No. 1).  On March 17, 2023, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket Nos. 10, 11).  The Commissioner interposed a cross-motion for judgment on the pleadings, supported by a memorandum of law, on April 13, 2023. (Docket Nos. 12, 13).

## II.  APPLICABLE LAW

A.    *Standard of Review*

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Lamay v. Commissioner of Soc. Sec*.,

562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a

five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is
> currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has
> a "severe impairment" which limits his or her mental or physical
> ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner
> must ask whether, based solely on medical evidence, claimant
> has an impairment listed in Appendix 1 of the regulations. If the
> claimant has one of these enumerated impairments, the
> Commissioner will automatically consider him disabled, without
> considering vocational factors such as age, education, and
> work experience.
>
> 4. If the impairment is not "listed" in the regulations, the
> Commissioner then asks whether, despite the claimant's severe
> impairment, he or she has residual functional capacity to
> perform his or her past work.
>
> 5. If the claimant is unable to perform his or her past work, the
> Commissioner then determines whether there is other work
> which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the

burden shifts to the Commissioner at step five. *See Green-Younger v.*

*Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner

determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises two main arguments in support of her request for reversal of the ALJ's decision.  First, she challenges the ALJ's RFC determination.  Second, Plaintiff argues that the ALJ's step five analysis was flawed. This Court will address both arguments in turn.

### A.    RFC

A claimant's "residual functional capacity" ("RFC") is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis."  *Melville*, 198 F.3d at 52 (quoting SSR 96-8p).  When assessing a claimant's RFC, an ALJ must consider medical opinions regarding the claimant's functioning and make a determination based on an assessment of the record as a whole. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.9527(d)(2) ("Although we consider opinions from medical sources on issues such as ...your residual functional capacity...the final responsibility for deciding these issues is reserved to the Commissioner.").

As noted above, the ALJ found that Plaintiff retained the RFC to perform sedentary work, as defined in 20 CFR 404.1567 (a), with the following limitations: she can perform occasional climbing of ramps and stairs; no climbing ladders, scaffolds and ropes; occasional balancing, stooping, kneeling and crouching; never crawl; occasionally reach, including overhead reaching, with the right upper extremity; and frequently handle and finger with the right hand and wrist. (T at 548).

Plaintiff challenges this conclusion, arguing that a proper assessment of her RFC should have included additional functional limitations, including the need to alternate sitting and standing, limitation on her ability to flex and rotate her neck, and no more than occasional handling, fingering, and feeling.

After careful review of the record and the ALJ's written decision the Court concludes that the RFC determination is supported by substantial evidence.

The ALJ relied on multiple independent medical evaluations performed by Dr. Donald Cally in connection with Plaintiff's claim for workers' compensation benefits.  In January of 2019, Dr. Cally examined Plaintiff, reviewed her records, and opined that she could work "in a light or modified duty position that is mainly sedentary in nature" and found that

Plaintiff could not "do any heavy bending, lifting, pulling, pushing or carrying." (T at 437).  In two later evaluations (rendered in July of 2019 and February of 2020), Dr. Cally reported that Plaintiff could "work in a modified duty position that is mainly sedentary in nature," with no repetitive lifting, bending, pushing, pulling, or carrying, and no lifting greater than 10 pounds. (T at 441, 503).

The ALJ found Dr. Cally's assessments generally persuasive, as they were based on thorough physical examinations and reviews of Plaintiff's records.  The ALJ also concluded that Dr. Cully's evaluations were consistent with the overall treatment record. (T at 553).  The ALJ did not accept Dr. Cally's assessment regarding Plaintiff's ability to lift or bend, finding those limitations inconsistent with treatment notes showing that Plaintiff had full motor strength, sensation, and reflexes, along with the ability to bend while driving. (T at 553).

The ALJ's RFC determination is also supported by the opinions of Drs. Feldman and Samuel, non-examining State Agency review consultants, who opined that Plaintiff could lift 5 pounds occasionally and 10 pounds frequently; sit, stand, or walk for six hours in an eight-hour workday; and occasionally reach with the right upper extremity. (T at 58-59, 65-67, 75-76, 553).  *See Distefano v. Berryhill*, 363 F. Supp. 3d 453, 474

(S.D.N.Y. 2019)("'[S]tate agency physicians are qualified as experts in the evaluation of medical issues in disability claims,' and as such, 'their opinions may constitute substantial evidence if they are consistent with the record as a whole.'")(quoting *Leach ex rel. Murray v. Barnhart,* 02 Civ. 3561, 2004 U.S. Dist. LEXIS 668, at *26 (S.D.N.Y. Jan. 22, 2004)).

The ALJ's RFC assessment is supported by a reasonable reading of the treatment record, which included consistent findings of normal gait and station; slight tenderness of neck and low back; no muscle atrophy of the right shoulder; and no deformity of the right elbow. (T at 263, 337, 378-89, 437, 440-41, 476, 502-03, 550-51).

Although the record includes several opinions that Plaintiff was "100 % temporarily impaired" during the period in question (T at 552-53), the ALJ was not obliged to accept these conclusory assessments rendered in the context of Plaintiff's claim for workers' compensation benefits. *See Guzman v. Astrue*, No. 09-CV-3928 (PKC), 2011 WL 666194, at *10 (S.D.N.Y. Feb. 4, 2011)(treating provider's statement "that the claimant is 'disabled' or 'unable to work' is not controlling," because such determinations are reserved for the Commissioner)(citing 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1)); *see also Snell v. Apfel*, 177 F.3d 128, 133

(2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").

The ALJ also gave some weight to Plaintiff's activities of daily living, which included light cleaning and cooking, grocery shopping with assistance, and driving a car. (T at 553). A claimant's "normal range of activities" may be relied upon as evidence that the claimant "retains a greater functional capacity than alleged." *Smoker v. Saul*, No. 19-CV-1539 (AT) (JLC), 2020 U.S. Dist. LEXIS 80836, at *53 (S.D.N.Y. May 7, 2020)(citation omitted).  In particular, "[e]vidence that a plaintiff is capable of participating in various activities of daily living despite allegations of severe pain can support a determination that a plaintiff can perform sedentary work." *Niven v. Barnhart*, 03 Civ. 9359 (DLC), 2004 U.S. Dist. LEXIS 17337, at *19 (S.D.N.Y. Sept. 1, 2004)(citing *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980)).

There is no question that Plaintiff suffers from pain and limitation. The ALJ did not dismiss the evidence of impairment and, in fact, found Plaintiff unable to perform her past relevant work and limited her to a reduced range of sedentary work. (T at 548, 554).

"[D]isability requires more than mere inability to work without pain."

*Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983). "Otherwise,

eligibility for disability benefits would take on new meaning." *Id.*

Here, the ALJ offered specific support for his RFC determination,

including a reasonable reading of the treatment notes and clinical

assessments, an appropriate reconciliation of the medical opinion

evidence, and proper consideration of Plaintiff's activities of daily living.

This is sufficient to sustain the disability determination under the deferential

standard of review applicable here.  *See Brault v. SSA*, 683 F.3d 443, 448

(2d Cir. 2012) (per curiam)("The substantial evidence standard means once

an ALJ finds facts, [a court] can reject those facts only if a reasonable

factfinder would *have to conclude otherwise*.")(emphasis in original)

(citation and internal quotation marks omitted); *see also McIntyre v. Colvin*,

758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than

one rational interpretation, the Commissioner's conclusion must be

upheld.")(citation omitted).

B.    Step Five Analysis

At step five of the sequential analysis, the Commissioner determines

whether claimant can perform work that exists in significant numbers in the

national economy.  The Commissioner bears the burden of proof at this step. *See Butts*, 416 F.3d at 103; 20 C.F.R. § 404.1560(c)(2).

Here, the ALJ determined that, as of the date of his decision, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (T at 554-55).  In reaching this conclusion, the ALJ relied on the testimony of a vocational expert, who opined that an individual with limitations consistent with Plaintiff's RFC could perform representative occupations that exist in significant numbers in the national economy. (T at 555, 578-83).

Plaintiff raises two challenges to the ALJ's step five analysis.  First, she argues that there is an unresolved conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles* ("DOT"). Second, she contends that the representative occupations do not exist in significant numbers in the national economy.[3]  Plaintiff's challenges fail for the following reasons.

---

[3] Plaintiff also argues that the step five analysis is flawed because the hypothetical presented to the vocational expert did not include additional functional limitations.  This argument is duplicative of Plaintiff's challenge to the RFC determination and fails for the reasons set forth above. *See Wavercak v. Astrue*, 420 F. App'x 91, 95 (2d Cir. 2011)("Because we have already concluded that substantial record evidence supports the RFC finding, we necessarily reject Wavercak's vocational expert challenge.").

       *1.    DOT*

     The Social Security Administration has taken administrative notice of the DOT, which was published by the Department of Labor and provides detailed descriptions of the requirements for a variety of jobs. *See* 20 CFR § 416.966 (d)(1).

     Social Security Ruling 00-4p provides that when a vocational expert testifies regarding job requirements, the ALJ has "an affirmative responsibility to ask about any possible conflict between that [testimony] and information provided in the DOT …."  SSR 00-4p.

     If there appears to be a conflict between the DOT and the vocational expert's testimony, the DOT is "so valued" that the ALJ is obliged to obtain a "reasonable explanation" for the conflict. *Brault v. SSA*, 683 F.3d 443, 446 (2d Cir. 2012)(citing SSR 004-p); *see also Lockwood v. Comm'r of SSA,* 914 F.3d 87, 91 (2d Cir. 2019).

     Here, the vocational expert identified three representative occupations that a hypothetical claimant with Plaintiff's limitations could perform – document-preparer, addresser, and call-out operator. (T at 555, 581-82).

     Plaintiff argues that there is an unresolved conflict between the DOT and the vocational expert's testimony because, per the DOT, the

representative occupations require frequent reaching, and the ALJ limited Plaintiff to no more than occasional reaching with her right upper extremity. Plaintiff's argument fails. Here's why.

First, one of the representative occupations (call-out operator) only requires occasional reaching. *See* DOT 237.367-014, 1991 WL 672186.

Second, there is no apparent or actual conflict with the DOT because (a) the ALJ did not assess any limitation in Plaintiff's ability to reach with her left upper extremity and (b) there is nothing in the DOT to indicate that the representative occupations require frequent reaching with *both* upper extremities. *See John B. v. Comm'r of Soc. Sec.*, No. 19-CV-01113, 2021 WL 681283, at *4 (W.D.N.Y. Feb. 22, 2021)("Unlike the facts in *Lockwood*, [the ALJ's] RFC did not preclude plaintiff from all reaching but limited him to occasional overhead reaching with the right arm only.")(collecting cases).

Third, even if there is an arguable conflict between the vocational expert's testimony and the requirements of the representative occupations, the ALJ's duty to resolve the conflict was satisfied.

The vocational expert was asked about potential conflicts with the DOT (T at 583). She noted that the DOT "does not differentiate between reaching with one upper extremity versus both upper extremities" and explained that her testimony was based on her "training and experience in

16

job placement, job analysis, and job development." (T at 583).  Plaintiff raises no challenge to the vocational expert's qualifications and counsel was given the opportunity to cross-examine the expert during the administrative hearing. (T at 583).

This was sufficient to satisfy the duty of inquiry recognized by the Second Circuit in *Lockwood v. Comm'r of SSA,* 914 F.3d 87, 91 (2d Cir. 2019); *see Arias v. Kijakazi*, No. 21-CV-3118 (RWL), 2022 WL 3646003, at *15-16 (S.D.N.Y. Aug. 24, 2022)(ALJ satisfied duty to resolve apparent conflicts through specific queries to the vocational expert ); *Bellore v. Kijakazi*, No. 20-CV-2306(EK), 2022 WL 955134, at *4 (E.D.N.Y. Mar. 30, 2022)(same and collecting cases).

### 2. *Job Numbers*

As noted above, the ALJ concluded that Plaintiff retained the RFC to perform jobs that exist in significant numbers in the national economy. (T at 554).  Plaintiff argues this conclusion is flawed because the representative occupations do not exist in significant numbers in the national economy.

The Social Security Act and Commissioner's regulations do not "provide a definition for a 'significant' number of jobs." *Koutrakos v. Colvin*, No. 3:13-CV-1290 (JGM), 2015 WL 1190100, at *21 (D. Conn. Mar. 16, 2015). Courts have held that the "significant number" threshold is "fairly

17

minimal," and they are "generally guided by numbers that have been found 'significant' in other cases." *See Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 229-30 (N.D.N.Y. 2015)(collecting cases).

While there is authority to suggest that 4,000-5,000 jobs are not a significant number, *see id.*, a total number over 17,000 is considered sufficient to satisfy the Commissioner's step five burden. *See Mota v. Comm'r of Soc. Sec.*, No. 20-CV-07294 (SN), 2022 WL 464098, at *12 (S.D.N.Y. Feb. 15, 2022)(9,600 jobs is a significant number); *Hanson v. Comm'r of Soc. Sec.*, No. 15-CV-150 (GTS) (WBS), 2016 WL 3960486, at *13 (N.D.N.Y. June 29, 2016) (finding that national numbers from 9,000 and up was "significant"), *adopted by Hanson v. Colvin*, 2016 WL 3951150 (N.D.N.Y. July 20, 2016); *Gray v. Colvin*, No. 12-CV-6485L, 2014 WL 4146880, at *6 (W.D.N.Y. Aug. 19, 2014)(16,000 jobs is significant).

Notably, in the present case, the vocational expert testified that there were over 60,000 jobs available between the three representative occupations. (T at 581-82).  This is more than sufficient to satisfy the "significant numbers" requirement.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED; the Commissioner's Motion for

Judgment on the Pleadings (Docket No. 12) is GRANTED; and this case is DISMISSED. The Clerk is directed to enter final judgment in favor of the Commissioner and then close the file.

Dated: October 1, 2023                    *s/Gary R. Jones*
                                          GARY R. JONES
                                          United States Magistrate Judge